UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MICHAEL K. SMITH<br><br>　　　　Plaintiff,<br><br>v.<br><br>SHELL EXPLORATION AND<br>PRODUCTION COMPANY<br><br>　　　Defendant. | CIVIL NO. 2:23-cv-2242 |

## **COMPLAINT**

Plaintiff Michael K. Smith asserts his causes of action against defendant Shell Exploration and Production Company as follows:

### THE PARTIES

1.　　Plaintiff is Michael K. Smith.  Mr. Smith is 40 years old.  He is a Louisiana citizen.  He resides in Jena, LaSalle Parish, with his family.  Mr. Smith and his family depend on his income and wages to support themselves.

2.　　Defendant is Shell Exploration and Production Company (hereinafter "**Shell**"). Shell is a foreign corporation organized in Delaware and headquartered in Texas. Shell is registered with the Louisiana Secretary of State and its agent for service of process is CT Corporation System.  Shell actively does business in Louisiana, Louisiana coastal waters, and the Gulf of Mexico adjacent to Louisiana and Louisiana territorial waters.  Shell transports employees to and from its Gulf of Mexico assets, including its Olympus Tension Leg Platform, from its Houma, Louisiana based heliport.

1

## JURISDICTION AND VENUE

3.     The Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question); 42 U.S.C. § 2000e-2 (Title VII discrimination based on religion and race); and 42 U.S.C. § 2000e-3 (Title VII retaliation) as more particularly set-out herein.

4.     The Court has supplemental, subject-matter jurisdiction over Mr. Smith's state law claims pursuant to 28 U.S.C. § 1367(a) because the state-law claims are so related to his federal law claims that they form part of the same case or controversy as more particularly set-out herein.

5.     The Court has personal jurisdiction over Shell because it is a foreign corporation registered and actively doing business in Louisiana and, through its registered agent for the service of process, is present within Louisiana at the time this suit commenced.

6.     Alternatively, the Court has personal jurisdiction over Shell because it regularly transacts business in Louisiana and regularly employs Louisiana citizens, committed the unlawful employment acts within Louisiana giving rise to the causes of action in this case, and derives substantial revenue from the services it provides in Louisiana.  Thus, Shell has established minimum specific contacts with Louisiana, arising from the specific facts of this case, comporting with the requirements of fair play, substantial justice, and the Fourteenth Amendment of the Constitution of the United States.

7.     Venue for Mr. Smith's Title VII claims is proper in this Court pursuant to 42

U.S.C. § 2000e–5(f)(3) because (1) the unlawful employment practice alleged herein was committed within this judicial forum (specifically, Terrebonne Parish and Gulf of Mexico waters adjacent to Orleans and surrounding Parishes) and (2) but for the unlawful employment practice, Mr. Smith would have remained employed in this district (same).

8.     Venue for Mr. Smith's supplemental state-law claims is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the unlawful conduct alleged in the case occurred in this judicial forum (Terrebonne Parish and Gulf of Mexico waters adjacent to Orleans and surrounding Parishes) and Mr. Smith suffered his injuries and damages in this judicial forum (same).  Venue is also proper under 28 U.S.C. § 1391(d) because Louisiana is a state with multiple judicial districts and Shell. is deemed to reside in this judicial district because of its contacts in the Eastern District of Louisiana.

## PROCEDURAL AND STATUTORY ALLEGATIONS

9.     This case arises under Title VII of the Civil Rights Act as amended.

10.    Shell employed more than 500 employees every week of 2020, 2021, and 2022.

11.    Accordingly, Shell is a covered employer under Title VII.

12.    Shell both paid Mr. Smith his wages and received labor from him in return.

13.    Accordingly, Shell is a covered employer under the Louisiana Employment Discrimination Law (the "LEDL").

14.    Shell hired Mr. Smith as its employee in 2007.

15.    Mr. Smith is White.

16.    At all times relevant to this case, Mr. Smith was assigned to Shell's Olympus tension leg platform located approximately 130 miles south of New Orleans, Louisiana on the Mississippi Canyon block of the Gulf of Mexico.

17.    On or about September 30, 2021, Shell enacted a COVID-19 vaccination policy applicable to employees assigned to Shell's Gulf of Mexico assets, like the Olympus Tension Leg Platform.  The COVID-19 policy required Gulf of Mexico employees to receive any of the then-currently available and approved vaccinations against the SARS-CoV-2 virus no later than January 1, 2022.  Non-compliant employees would not be permitted to return to work and were subject to termination under Shell's attendance policy.  While Shell did permit employees to apply for an "exception" to its COVID-19 policy based on religious objection, any resulting "approval" came with no reasonable accommodation.  Instead, Shell merely gave religious objectors an additional sixty days to continue working offshore while the objector tried to find a job transfer to an onshore position not subject to Shell's vaccination policy.  After sixty days, the religious objector would be terminated for violation of Shell's attendance policy the same as any other non-compliant employee.

18.    After Shell announced its COVID-19 policy, Mr. Smith began applying for transfers or promotions to onshore jobs that did not require compliance with Shell's COVID-19 vaccination rule.

19.    In November 2021, Mr. Shell applied for the job of Production Specialist in support of Shell's Whale offshore asset also located in the Gulf of Mexico.

20.    Mr. Smith was objectively well-qualified for the job and was interviewed for

the position.

21.     Shell did not select Mr. Smith for the position.    Shell instead selected comparator S.B.,[1] a black man.

22.     Mr. Smith alleges Shell did not select him for the job because of or based on his race.

23.     On December 14, 2021, Mr. Smith timely requested a reasonable accommodation to Shell's COVID-19 vaccination policy based on his sincerely held religious objection.   Mr. Smith offered to use appropriate face coverings, submit to Shell's periodic COVID-19 testing procedures, and socially distance when possible. On December 15, Mr. Smith timely supplemented his request for reasonable accommodation by informing Shell he had previously recovered from a COVID-19 infection, and Mr. Smith provided laboratory test results confirming that, as of September 27, 2021, Mr. Smith possessed antibodies to the SARS-CoV-2 virus.   For all practical purposes, Mr. Smith should have been regarded as compliant with Shell's COVID-19 vaccination policy based on his infection-acquired immunity.

24.     On December 28, 2021, Shell denied Mr. Smith's request for reasonable accommodation.   Shell indicated Mr. Smith could continue to work offshore in his position for sixty days after January 1, 2022 so long as he complied with a rigorous COVID-19 quarantine and testing protocol.   Shell indicated Mr. Smith would be subject to termination because of unapproved absences after the sixty-day period

---

[1] Because this is a publicly filed document, and because Mr. Smith does not allege any wrongdoing by S.B., plaintiff has chosen to refer to S.B. by his initials.  Plaintiff will inform defendant of S.B.'s identity during discovery.

ended unless Smith successfully transferred or promoted to another position onshore not subject to Shell's vaccination policy.

25.     Mr. Smith thereafter applied for multiple other jobs with Shell for which he was objectively qualified but was not selected for any of them.  Some of these were located aboard Olympus and some were not.  Two of the positions, relevant to this lawsuit, were the "Operations Supervisor" and "Maintenance Supervisor" positions assigned to Olympus.  One of the decision-makers for these selections told Mr. Smith he was aware of Smith's vaccination status, and it would not be fair to select Smith instead of a person who was vaccinated.

26.     Mr. Smith alleges he was not selected for these positions because, again, Shell failed to reasonably accommodate his religious objection to Shell's COVID-19 vaccination policy, and in retaliation against him for requesting the reasonable accommodation in the first place.

27.     On April 19, 2022, within 300 days of his denial of reasonable accommodation and non-selection for the Production Specialist, Operations Supervisor, and Maintenance Supervisor positions, Mr. Smith timely filed an EEOC Charge of Discrimination with the EEOC New Orleans Field Office alleging Shell unlawfully discriminated against him based on his race and religion, failed to reasonably accommodate his religious objection, and retaliated against him for requesting reasonable accommodations in the first place in violation of Title VII and in retaliation for (EEOC Charge No. 461-2022-01390).

28.     EEOC gave Shell notice of Mr. Smith's Charge of Discrimination at some point

before September 16, 2022.

29.    Shell eventually ended its vaccination mandate effective November 1, 2022.

30.    Mr. Smith returned to work on Olympus in his original job in February 2023.

31.    On June 27, 2023, the EEOC issued Mr. Smith a Notice of Right to Sue in this matter.

32.    Mr. Smith timely filed this federal lawsuit within 90 days of receiving the EEOC's Notice of Right to Sue letter.

## FACTS

### A.    Mr. Smith and Shell

33.    Shell employed Mr. Smith as the Marine Supervisor onboard Shell's Olympus tension leg platform located in the Gulf of Mexico, on the Mississippi Canyon block, approximately 130 smiles due south of New Orleans, Louisiana.  Shell transports its Olympus workforce to and from the platform via its heliport located in Houma, Louisiana.   Mr. Smith considers himself to be organizationally employed and stationed in Louisiana.

34.    Mr. Smith was objectively good at his job.  He does not recall receiving any written discipline prior to the events in this case.

35.    At all times during his employment, Mr. Smith successfully performed the essential job responsibilities of his Marine Supervisor position.  Mr. Smith has never objected to any of his essential or non-essential job responsibilities because of his sincerely held religious beliefs.  The only Shell policy Mr. Smith has ever objected to because of his sincerely held religious beliefs was Shell's COVID-19 vaccination

mandate (discussed in greater detail below).

36.     Mr. Smith usually worked 14/14 hitches aboard Olympus.  Specifically, he usually worked approximately 14 days aboard Olympus and then rotated back ashore, off from work, for the next 14 days.

37.     Mr. Smith contracted COVID-19 and fully recovered from it prior to Shell's rejection of Mr. Smith's request for reasonable accommodation in December 2021. Specifically, Mr. Smith underwent laboratory testing that confirmed, as of September 27, 2021, that he maintained antibodies to the SARS-CoV-2 virus.

**B.     Shell's Response to COVID-19 Prior to Vaccinations**

38.     The respiratory disease known as COVID-19 is caused by the Severe Acute Respiratory Syndrome Coronavirus 2 ("SARS-CoV-2") and its many variants.

39.     By the week of August 12, 2020, the CDC reported a total of slightly more than 5 million confirmed cases of COVID-19 nationwide.

40.     During this time, before any COVID-19 vaccine became available, Shell continued to do business, continued to operate Olympus, and continued to require Mr. Smith and his colleagues to perform their responsibilities aboard the platform.

41.     Shell implemented several work-related precautions that it apparently determined were safe enough to allow Mr. Smith and his colleagues to continue performing their job responsibilities and interacting with others without unreasonable risk of infection.

42.     Among those precautions were social distancing from one another, symptom checks, the use of face coverings, and periodic COVID-19 testing.

43.    Using these precautions, Shell apparently determined Mr. Smith and his colleagues did not present a direct threat of infection to each other aboard Olympus.

44.    Mr. Smith did come to work aboard Olympus, did continue to do his job, and Shell did continue to make significant profits during the pandemic because of the labor of Mr. Smith and his colleagues.

## C.    Shell's Response to COVID-19 after Vaccinations

45.    By way of background, the CDC reports that as of June 1, 2021 the COVID-19 "B.1.617.2 / 'Delta' variant" had become the "dominant variant in the U.S."[2]

46.    The CDC reports that as of July 30, 2021, "The early data showing high viral loads in people infected with the Delta variant of COVID-19 suggest a concern that, unlike with other variants, vaccinated people infected with Delta can transmit the virus to others."[3]

47.    Around August 23, 2021, the FDA granted full approval to the first publicly available COVID-19 vaccination in the United States manufactured by Pfizer.

48.    On October 29, 2021, *The Lancet* medical journal reported that "fully vaccinated individuals with breakthrough infections have peak viral load similar to unvaccinated cases and can efficiently transmit infection in household settings, including to fully vaccinated contacts."[4]

---

[2] The CDC publishes a "COVID-19 Timeline" on its website which includes these facts. The site may be accessed here: https://www.cdc.gov/museum/timeline/covid19.html

[3] *Id.* at https://www.cdc.gov/museum/timeline/covid19.html

[4] Anika Singanayagam, et al., *Community transmission and viral load kinetics of the SARS-CoV-2 delta (B.1.617.2) variant in vaccinated and unvaccinated individuals in the UK: a prospective, longitudinal, cohort study*, THE LANCET (Oct. 29, 2021). A copy of the article may be accessed here: https://www.thelancet.com/journals/laninf/article/PIIS1473-3099(21)00648-4/fulltext

49.    On January 19, 2022, shortly after Shell denied Mr. Smith's request for reasonable accommodation, the CDC reported in its Morbidity and Mortality Weekly Report ("MMWR") that people who had developed immunity to COVID-19 from prior infection posed no more risk – and perhaps less of a risk – of reinfection by the predominate Delta variant than people who had developed immunity from vaccination:

> These results suggest that vaccination protects against COVID-19 and related hospitalization **and that surviving a previous infection protects against a reinfection**. Importantly, **infection-derived protection was greater** after the highly transmissible Delta variant became predominant, **coinciding with early declining of vaccine-induced immunity in many persons.** (emphasis added)[5]

50.    CDC's findings were widely reported in news media.[6]

51.    Less than four months earlier, in September 2021, Shell enacted a new employment policy that, on its face, required all employees assigned to any of its Gulf of Mexico assets – like Olympus – to receive any of the FDA-approved COVID-19 vaccinations unless the employee applied for and was granted by management an accommodation based on religious objection or disability.

52.    However, Mr. Smith alleges that Shell's religious accommodation policy was a sham.  Specifically, to the best of his knowledge, Shell did not permit any religious objector to continue working on Olympus.  Mr. Smith alleges the policy was designed

---

[5] A copy of this report may be accessed at
https://www.cdc.gov/mmwr/volumes/71/wr/mm7104e1.htm.

[6] *See, e.g.*, *Prior COVID infection more protective than vaccination during Delta surge – U.S. study*, REUTERS (Jan. 19, 2022), a copy of which may be accessed here:
https://www.reuters.com/business/healthcare-pharmaceuticals/prior-covid-infection-more-protective-than-vaccination-during-delta-surge-us-2022-01-19/

simply to give Shell pretextual cover against future legal liability for refusing to engage in any interactive or reasonable accommodation process for employees who held religious objection to Shell's vaccination mandate.

53.     Ultimately, under Shell's policy, any unvaccinated worker who had not been granted an "accommodation" (which did not appear to actually exist), and who had not received any of the available COVID-19 vaccinations by January 1, 2022, was prohibited from working offshore and subject to termination for violation of Shell's attendance policy.   Shell permitted religious objectors who were granted an "accommodation" to continue working offshore for sixty days, but thereafter were likewise subject to termination for violation of Shell's attendance policy.  To remain employed, workers who did not comply with Shell's vaccination rule were required, on their own initiative, to identify, apply for, and win lateral transfer or promotion to an onshore job within Shell not subject to the company's vaccination policy.

54.     Mr. Smith alleges that at no time did Shell offer any reason (rational or otherwise) for why it permitted Mr. Smith and his unvaccinated colleagues to work on Olympus throughout the entire pandemic, under conditions that Shell itself apparently deemed reasonably safe and not a direct threat to worker health or safety, but then refused to allow religious objectors to continue working on Olympus after the CDC approved the first COVID-19 vaccine in August 2021.

55.     Likewise, after Shell enacted its vaccination policy, it still permitted certain of its non-compliant employees to continue working aboard Olympus for at least sixty days after January 1, 2022 so long as the worker complied with Shell's revised

11

quarantine and testing protocols.  Specifically, Shell permitted its non-vaccinated, objecting workers to continue working offshore so long as the worker (1) completed a 5-day quarantine immediately prior to helicoptering to Olympus; (2) tested negative for COVID-19 on the second and 5th day of quarantine; (3) submitted to COVID-19 testing on demand while onboard Olympus; and (4) otherwise complied with all of Shell's other COVID-19 related safety protocols.

56.    Shell provided no reason (rational or otherwise) for why it permitted employees like Mr. Smith to continue working on Olympus for at least two months while adhering to Shell's enhanced quarantine and testing procedures, but then arbitrarily subjected those same employees to possible, immediate termination under Shell's attendance policy after the sixty-day mark.

57.    Moreover, despite prevailing public health evidence that both vaccinated and non-vaccinated people were capable of contracting and spreading the COVID-19 Delta variant, and that non-vaccinated people who had contracted and recovered from COVID-19 appeared to have immunity as durable and effective as their vaccinated peers, Shell never offered any reason (rational or otherwise) why the infection, recovery, and immunity history of workers like Mr. Smith was not considered as part of the reasonable accommodation analysis to continue working aboard Olympus.

58.    Based on all these facts and circumstances as Mr. Smith appreciates them, he alleges that Shell did not actually believe that non-vaccinated workers aboard Olympus posed any unreasonable safety risk or direct threat to employee health or safety after September 30, 2021.

59.     Instead, Mr. Smith alleges that Shell's statements to the contrary were pretext for what was, in reality, a business decision meant to curry political, social, or business favor in the governmental, business, and public relations communities and at the expense of religious objectors like Mr. Smith.

60.     Likewise, based on all these facts and circumstances as he appreciates them, Mr. Smith alleges that Shell never intended to permit any non-vaccinated religious objector to continue working aboard Olympus because Shell's decision-makers held animus against them based on their religious beliefs, and not because of any pretextual belief that religious objectors posed a direct threat to employee safety.

**D.    Shell Suspends Mr. Smith and Offers No Accommodation**

61.     Mr. Smith identifies as a Christian and adheres to what he describes as a Christian religious worldview.

62.     Relevant to this case, Mr. Smith holds a sincere religious belief that, at the time relevant to the case, prevented him from receiving any of the then-currently available COVID vaccines, and, therefore, conflicted with Shell's vaccination policy.

63.     Specifically, Mr. Smith believes that good and evil exist, and he is spiritually obligated to do good and spiritually prohibited from doing evil.  Mr. Smith believes that all iterations of the then-available COVID-19 vaccines were spiritually evil because Mr. Smith determined each was derived, researched, or laboratory-tested using fetal cell lines, harvested from human biological tissue without consent.  Mr. Smith's religious belief is that receiving any of these vaccines is akin to participating in what he regarded in context as the sin of abortion, and, accordingly, Mr. Smith's

religious belief prohibited him from receiving any of the then-available COVID-19 vaccines.

64.   On December 14, 2021, Mr. Smith timely notified Shell of his religious objection to its COVID-19 vaccination mandate.

65.   Mr. Smith forthrightly described the basis of his religious objection noted above.

66.   On December 15, 2021, Mr. Smith timely supplemented his request for religious accommodation by notifying Shell that he has previously contracted and fully recovered from COVID-19, and by supplying Shell with laboratory testing proving that, as of September 27, 2021, Mr. Smith possessed antibodies to the SARS-CoV-2 virus.

67.   At no time did Shell, its human resources officers, or anyone else attempt to interview Mr. Smith regarding his request for accommodation or otherwise engage in a good-faith, interactive process with him.

68.   On December 28, 2021, Shell communicated that it denied Mr. Smith's request for reasonable accommodation, and Smith would not be permitted to continue working on Olympus after the expiration of his sixty-day work extension set to begin on January 1, 2022.  Shell indicated that Mr. Smith would be subject to termination under Shell's attendance policy unless he could identify, apply for, and win a transfer or promotion to an onshore position not subject to Shell's vaccination policy.

69.   In reality, multiple reasonable accommodations existed that would have cost Shell zero financial, logistical, or safety burdens while permitting Mr. Smith to safety

continue working aboard Olympus.

70.     Such accommodations included, but were not limited to: observing all of Shell's health protocols prior to January 1, 2022; observing Shell's enhanced "sixty day extension" quarantine and testing protocols enacted after January 1, 2022 that required Mr. Smith to undergo COVID-19 testing, at his own expense, both during his onshore quarantine and again just prior to departure to Olympus; using approved face coverings aboard Olympus at all times; or simply regarding Mr. Smith as compliant with Shell's vaccination mandate because he had already contracted and fully recovered from COVID-19 and continued to maintain antibodies to the SARS-CoV-2 virus as of at least September 27, 2021.  Mr. Smith would have agreed to any of these accommodations.

71.     Likewise, by agreeing to any or all these accommodations, and given his infection-derived immunity, Mr. Smith could have ensured, for all practical purposes, that he was less of a risk of contracting or passing the SARS-Co-V-2 virus versus his vaccinated peers.

72.     These reasonable accommodations posed Shell zero burden, hardship, health risk, financial cost, or future risk.  Shell's refusal to permit these zero-burden accommodations is inexplicable.  The only reasonable conclusion is that Shell suspended Mr. Smith based on his religious belief or in retaliation against him for engaging in the protected activity of requesting a reasonable accommodation in the first place.

**E.      Shell Rejects Smith for at Least Three Transfers or Promotions**

73.     Relevant to this case, Mr. Smith began applying for transfers or promotions to onshore and offshore jobs within Shell beginning in November 2021.

74.     In November 2021, Mr. Shell applied for the job of Production Specialist in support of Shell's Whale offshore asset also located in the Gulf of Mexico.

75.     Mr. Smith was objectively well-qualified for the job and was interviewed for the position.

76.     Shell did not select Mr. Smith for the position.   Shell instead selected comparator S.B.,[7] a black man.

77.     Mr. Smith alleges Shell did not select him for the job because of or based on his race.

78.     Specifically, on December 15, 2021, the Operations Manager of the Whale asset and selecting official for the promotion, Lautrice McLendon (Black), told Mr. Smith he had not been selected for the position. Mr. McLendon told Mr. Smith he was ranked equally to the winning candidate, but Smith was not selected because he did not give the interview panel sufficient examples of his leadership and participation in Shell's "Diversity and Inclusion" program.

79.     Shell does, in fact, have a "Diversity and Inclusion" program.  Per Shell's public facing statements on its website, one component of the program is to "improve the inclusion and experience of Black employees and other underrepresented racial and

---

[7] Because this is a publicly filed document, and because Mr. Smith does not allege any wrongdoing by S.B., plaintiff has chosen to refer to S.B. by his initials.  Plaintiff will inform defendant of S.B.'s identity during discovery.

ethnic groups." Shell indicates that the "US and the UK" are "initial areas of focus" for what Shell describes as "representation gaps." Likewise, during a town hall meeting in 2021, Shell announced what it described as a "25% diversity goal" for its Gulf of Mexico operations and employees.

80. Later, Mr. Smith learned that Igor Kochberger, the Operations Manager of Olympus and asset-level counterpart to Lautrice McLendon, told another Shell employee that Smith was not selected for the Production Specialist position because he was White, and Shell preferred to select a candidate who was a person of color to satisfy Shell's diversity goal.

81. In approximately March 2022, Mr. Smith thereafter applied for other jobs with Shell for which he was objectively qualified but was not selected for any of them.

82. Specifically, Mr. Smith applied for the "at large" positions of "Operations Supervisor" and "Maintenance Supervisor" which could have been assigned to any of several of Shell's Gulf of Mexico assets. One of the decision-makers for these positions, Operations Manager Kochberger, told Mr. Smith he was aware of Smith's vaccination status, and it would not be fair to select Smith instead of a person who was vaccinated.

83. Mr. Smith alleges he was not selected for these positions because, again, Shell failed to reasonably accommodate his religious objection to Shell's COVID-19 vaccination policy, and in retaliation against him for requesting the reasonable accommodation in the first place.

**F.      Shell Eventually Returns Mr. Smith to Work**

84.      By coincidence, Mr. Smith suffered a back injury unrelated to the allegations of this lawsuit, and Shell approved his FMLA leave from October 7, 2021 until June 16th, 2022.  Under Shell's vaccination policy, Mr. Smith's "sixty day" work extension did not begin to run until he returned to work on June 16.

85.      Mr. Smith re-injured his back and was approved for further FMLA leave effective August 11, 2022.  At this time, Mr. Smith had only approximately four days remaining of his "sixty day" work extension before he was subject to termination under Shell's attendance policy.

86.      On September 18, 2022, President Biden announced while on the *60 Minutes* television program that "The pandemic is over."

87.      On November 1, 2022, Shell ended its COVID-19 vaccination requirement for employees working on its Gulf of Mexico assets, including aboard Olympus.

88.      On or about February 9, 2022, Mr. Smith returned to work aboard Olympus after his back-related medical restrictions were lifted.

**G.      Shell Intentionally Discriminated and Retaliated Against Mr. Smith**

89.      Based on the facts and circumstances as he understands them, Mr. Smith alleges that Shell, through its decision-makers, intentionally, maliciously, and with reckless disregard to his federally protected rights discriminated against him based on his religion, refused to accommodate his religious objection despite numerous, reasonable accommodations, and retaliated against him because of his protected activities.

90.    Based on the facts and circumstances as he understands them, Mr. Smith alleges that Shell, through its decision-makers, intentionally, maliciously, and with reckless disregard to his federally protected rights discriminated against him based on his race.

91.    At all times, Shell's decision-makers took these discriminatory and retaliatory actions against Mr. Smith while in the full course and scope of their employment, and Shell is liable of the actions of its officers, employees, and agents.

**H.    Damages**

92.    Mr. Smith suffered loss of income and fringe benefits because of his non-selections for the Operations Supervisor and Maintenance Supervisor positions because of Shell's religious discrimination, failure to accommodate, and retaliation.

93.    Mr. Smith suffered loss of income and fringe benefits because of his non-selection for the Production Specialist position onboard Whale because of Shell's race discrimination.

94.    Mr. Smith suffered mental anguish, emotional distress, loss of enjoyment of life, and related injuries because of Shell's unlawful discrimination and retaliation.

95.    Mr. Smith has suffered other compensatory and out-of-pocket damages because of Shell's unlawful discrimination and retaliation.

## CAUSES OF ACTION

**A.    Failure to Reasonably Accommodate Religious Objection and Failure to Promote against Shell under Title VII**

96.    Mr. Smith states a cause of action for failure to reasonably accommodate his religious objection and failure to promote against Shell under Title VII.

97.     Pursuant to Title VII of the Civil Rights Act (as amended), an employer may not discriminate against any "individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's . . . religion[.]"  42 U.S.C. § 2000e-2(a)(1).  "Religion" includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j).

98.     Title VII makes it "an unlawful employment practice . . . for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977).  Once a plaintiff establishes he alerted his employer to his sincerely held religious objection, "the burden shifts to the defendant to demonstrate either that it reasonably accommodated the employee, or that it was unable to reasonably accommodate the employee's needs without undue hardship." *Antoine v. First Student, Inc.*, 713 F.3d 824, 831 (5th Cir. 2013).  Current decisional law holds a proposed accommodation is unreasonable "when an employer is required to bear more than a de minimis cost." *Davis v. Fort Bend Cty.*, 765 F.3d 480, 487 (5th Cir. 2014); *accord Hardison*, 432 U.S. at 84.  Nevertheless, the Supreme Court recently held oral argument in April 2023 in a case to decide whether to abandon the "de minimus cost" standard in favor of a standard more generous to the employee and more onerous to the employer.  *See Groff v. DeJoy*, 143 S.Ct. 646 (2023) (discussing

20

question presented of "Whether this Court should disapprove the more-than-de-minimus-cost test for refusing Titel VII religious accommodations stated in *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977)).[8]

99.    An employer who discriminates against an employee in violation of Title VII is liable for the employee's lost back wages, lost future wages or reinstatement, compensatory damages, punitive damages, and reasonable attorney's fees and costs incurred in the matter.

100.    Plaintiff incorporates by reference here all the factual allegations alleged in this lawsuit.

101.    At the outset, Mr. Smith has proven his prima facie case for failure-to-accommodate discrimination.  He held a sincere, religious belief that conflicted with Shell's COVID-19 vaccination policy (described throughout this lawsuit).  Mr. Smith timely requested a reasonable accommodation based on his religious objection.  While Shell accepted the sincerity of Mr. Smith's religious objection, Shell refused to reasonably accommodate him and placed Mr. Smith at risk for eventual termination under Shell's attendance policy.  But for Mr. Smith's approved FMLA medical leave, he would have likely been terminated under Shell's vaccination policy.

102.    Additionally, in approximately March 2022, Mr. Smith applied for two different "at large" positions across Shell's Gulf of Mexico assets for which he was well qualified, the "Operations Supervisor" and "Maintenance Supervisor" positions.

---

[8]    *See* Petitioner's Brief, an electronic copy of which may be accessed for free at the Supreme Court's website at https://www.supremecourt.gov/DocketPDF/22/22-174/255164/20230327094704821_Groff%20-%20Corrected%20Merits%20Brief.pdf (last accessed June 23, 2023)

Shell decision-makers informed Mr. Smith he would not be considered because he was not compliant with Shell's COVID-19 vaccination policy.  Mr. Smith alleges that, had Shell reasonably accommodated his sincerely held religious objection, he would have been interviewed and selected for either or both positions.

103.   Many reasonable accommodations existed that would have enabled Mr. Smith to continue working aboard Olympus in any position, none of which would have caused Shell even a de minimus burden.

104.   Specifically, as described throughout this complaint, Shell could have permitted Mr. Smith to continue working while observing the same safety precautions Shell had previously permitted non-vaccinated workers to adhere to, both before and after vaccinations became publicly available in the United States. Alternatively, Shell could have simply regarded Mr. Smith as complaint with its COVID-19 vaccination policy given his recovery from COVID-19 and his laboratory confirmed, infection-derived immunity.  Likewise, the nature of Mr. Smith's work responsibilities and rotational shifts allowed him to quarantine for many days prior to returning to work.  Combined with COVID-19 testing at his own expense during his quarantine period and continuous use of face coverings and other precautions while at work – all of which Mr. Smith was willing to undertake – there was no practical or reasonable risk that Mr. Smith could have contracted or transmitted COVID-19 in the workplace.  Mr. Smith was essentially willing to make himself the safest employee aboard Olympus or at any other Shell offshore facility, even compared to his vaccinated colleagues, and these precautions imposed zero burden,

cost, or risk to Shell and its employees. The fact Shell did not accept these accommodations strongly evinces religious animus and unlawful religious discrimination.

105. Mr. Smith alleges other reasonable accommodations likely existed as well, but Shell refused to engage in any meaningful, interactive process with him to determine what those might have been. Had Shell been willing to engage in an interactive process, Mr. Smith alleges he and management could have devised a reasonable accommodation.

106. Accordingly, Shell owes Mr. Smith all damages arising from its failure to reasonably accommodate his religious beliefs and practices and his related non-selections for promotion, including Mr. Smith's lost back wages, lost future wages or reinstatement, compensatory damages, punitive damages, and reasonable attorney's fees and costs incurred in the matter.

107. Finally, in the alternative, if the Court were to find that a proposed accommodation that would have permitted Mr. Smith to continue working was nevertheless "unreasonable" because it imposed something more than "de minimis" burden on Shell, Mr. Smith alleges the proper standard to evaluate a reasonable accommodation claim in a Title VII religious objection case is akin to the standard currently applicable in disability claims under the ADAAA – that is to say, an individualized assessment of current circumstances that show that a specific reasonable accommodation would cause the employer significant difficulty or expense. *See* 29 C.F.R. § 1630.2. Plaintiff alleges the "de minimus" standard

currently applicable to Title VII religious objection cases is inconsistent with the statutory text of 42 U.S.C. § 2000e(j) and its meaning and should be overturned. *See Groff v. DeJoy*, 214 L.Ed.2d 382; 143 S.Ct. 646 (2023) (granting petition for writ of certiorari in religious accommodation case on questions of whether "the Court should disapprove the more-than-de-minimus-cost test" in religious accommodation cases under Title VII, and whether an employer may demonstrate "undue hardship" by showing a burden to co-workers rather than the business itself).

108.    Plaintiff likewise alternatively alleges that Shell was obligated to extend to Mr. Smith any reasonable accommodation from its COVID-19 vaccination policy on account of his religious objection that it afforded to any other employee for any other reason. *See E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775 (2015) ("But Title VII does not demand mere neutrality with regard to religious practices – that they be treated no worse than other practices.  Rather, it gives them favored treatment . . . Title VII requires otherwise-neutral policies to give way to the need for an accommodation").

**B.    Unlawful Disparate-Treatment Discrimination and Failure to Promote Based on Religion against Shell under Title VII**

109.    Mr. Smith states a cause of action for unlawful disparate-treatment discrimination based on religion and failure to promote against Shell under Title VII.

110.    Under Title VII, an employer illegally discriminates against an employee and fails to promote him when the decision is "because of" the worker's religion.  42 U.S.C. §2000e-2(a)(1).

111.    An employer also illegally fails to promote an employee when the decision "was

a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m); *accord Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005) (so holding). In a Title VII disparate-treatment action, an employer is vicariously liable for its decision-maker's discriminatory acts when the decision-maker serves as the employer's agent, or when the employer knew or should have known of the decision-maker's discriminatory conduct and took no remedial action. *See e.g., Flanagan v. Aaron E. Henry Cmty. Health Servs. Ctr.*, 876 F.2d 1231, 1235 (5th Cir. 1989).

112.   Plaintiff incorporates by reference here all the factual allegations alleged in this lawsuit.

113.   As alleged throughout this complaint, Shell's decision not to interview or select Mr. Smith for the "Operations Supervisor" and "Maintenance Supervisor" positions, despite the ready availability of reasonable accommodations, and against the weight of public health knowledge at the time, particularly given that Mr. Smith had contracted and fully recovered from COVID-19 by September 2021, was inexplicable. Mr. Smith alleges the actual explanation for these facts is that Shell held bias against Mr. Smith based on his religion and denied him an accommodation and failed to promote him because of that animus.

114.   Accordingly, Shell owes Mr. Smith all damages arising from its failure to promote him, including Mr. Smith's lost back wages, lost future wages or reinstatement, compensatory damages, punitive damages, and reasonable attorney's fees and costs incurred in the matter.

**C.   Unlawful Disparate-Treatment Retaliation and Failure to Promote Because of Protected Activities against Shell under Title VII**

115.   Mr. Smith states a cause of action for unlawful disparate-treatment retaliation and non-selection for employment because of protected activities against Shell under Title VII.

116.   Under Title VII, an employer may not discriminate against an employee "because he has opposed any practice made an unlawful employment practice under [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].  42 U.S.C. §2000e-3(a).  In the analogous context of the Americans with Disabilities Act, "[i]t is undisputed that making a request for a reasonable accommodation under the ADA may constitute engaging in a protected activity." *Tabatchnik v. Cont'l Airlines*, 262 Fed. Appx. 674, 676 (5th Cir. 2008).

117.   In a retaliation case, "an adverse employment action is one that 'a reasonable employee would have found . . . [to be] materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (citing *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53 (2006)).  "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007) (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)).

118.   Plaintiff incorporates by reference here all the factual allegations alleged in this lawsuit.

119.    Mr. Smith was a successful Marine Supervisor on Shell's Olympus platform. He applied for two "at large" positions across Shell's Gulf of Mexico assets, "Operations Supervisor" and "Maintenance Supervisor," approximately three months after he applied for a reasonable accommodation to Shell's vaccine policy.  He was objectively qualified for both jobs.  In addition or in the alternative to bias against Mr. Smith based on religious animus, Mr. Smith alleges Shell refused to hire him for either of these two positions in retaliation against Mr. Smith for engaging in protected activities under Title VII, including but not limited to requesting a reasonable accommodation to Shell's COVID-19 vaccination mandate in the first place.

120.    Accordingly, Shell owes Mr. Smith all damages arising from its wrongful non-selections, including Mr. Smith's lost back wages, lost future wages or reinstatement, compensatory damages, punitive damages, and reasonable attorney's fees and costs incurred in the matter.

## D.    Religious Discrimination and Retaliation against Shell under the LEDL

121.    Mr. Smith states a cause of action for unlawful failure-to-accommodate religious objection, disparate-treatment discrimination, disparate-treatment retaliation, and failure to promote based on religion and because of protected activates against Shell under the Louisiana Employment Discrimination Law, codified at La. Rev. Stat. Ann. § 23:301 *et seq.*

122.    Under the LEDL, no employer or labor organization may discriminate against an employee based on his religion.  La. Rev. Stat. Ann. § 23:332 *et seq.*  LEDL

discrimination claims are analyzed under the analogous Title VII standard. *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007).

123.   Plaintiff incorporates by reference here all the factual allegations alleged in this lawsuit.

124.   Accordingly, for all the reasons stated throughout this complaint, and specifically incorporating the analysis of plaintiff's claims for failure-to-accommodate liability, disparate-treatment discrimination based on religion, and disparate-treatment retaliation because of protected activities under Title VII, Shell is liable to Mr. Smith for all his damages arising from defendants unlawful acts, including lost back wages, lost future wages or reinstatement, compensatory damages, and reasonable attorney's fees and costs incurred in this matter.

## E.   Unlawful Disparate-Treatment Discrimination Based on Race against Shell under Title VII

125.   Mr. Smith states a cause of action for unlawful disparate-treatment discrimination based on race against Shell under Title VII.

126.   Pursuant to Title VII of the Civil Rights Act (as amended), an employer may not discriminate against any "individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's race[.]"   42 U.S.C. §2000e-2(a)(1).

127.   Under Title VII, an employer illegally fails to promote an employee when the decision is "because of" the employee's race  42 U.S.C. §2000e-2(a)(1).

128.   An employer also illegally fails to promote an employee when the decision "was a motivating factor for any employment practice, even though other factors also

motivated the practice."  42 U.S.C. § 2000e-2(m); *accord Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005) (so holding).

129.    An employer is vicariously liable for its decision-maker's discriminatory acts when the decision-maker serves as the employer's agent, or when the employer knew or should have known of the decision-maker's discriminatory conduct and took no remedial action.  *See e.g.*, *Flanagan v. Aaron E. Henry Cmty. Health Servs. Ctr.*, 876 F.2d 1231, 1235 (5th Cir. 1989).

130.    A private employer who discriminates against an employee in violation of Title VII is liable for the employee's lost back wages, lost future wages or reinstatement, compensatory damages, punitive damages, and reasonable attorney's fees and costs incurred in the matter.

131.    Plaintiff incorporates by reference here all the factual allegations alleged in this lawsuit.

132.    Mr. Smith was well qualified for the Production Specialist position onboard Whale.  Shell decision-makers interviewed Mr. Smith for the position.  Mr. Smith performed objectively well during the interview.  Whale's Operations Manager, Lautrice McLendon, told Mr. Smith he was not selected for the position, despite being equally ranked to the selectee, because Mr. Smith did not provide the interview panel with sufficient examples of his leadership and participation in Shell's "Diversity and Inclusion" program.

133.    Shell does, in fact, maintain a Diversity and Inclusion program, and Shell has publicly stated what it describes as a "25% diversity goal" for its Gulf of Mexico

operations and employees. Later, Mr. Smith learned that Igor Kochberger, the Operations Manager of Olympus and asset-level counterpart to Lautrice McLendon, told another Shell employee that Smith was not selected for the Production Specialist position because he was White, and Shell preferred to select a candidate who was a person of color to satisfy Shell's diversity goal. Shell instead selected one of Mr. Smith's colleagues who was Black.

134.    Based on all these facts, Mr. Smith alleges that Shell did not select him for the Production Specialist position because of his race.

135.    Alternatively, Mr. Smith alleges that his race was at least a motivating factor in Shell's selection decision.

136.    Accordingly, Shell owes Mr. Smith all damages arising from its unlawful discrimination and failure to promote, including Mr. Smith's lost back wages, lost future wages or reinstatement, compensatory damages, punitive damages, and reasonable attorney's fees and costs incurred in the matter.

**F.    Race Discrimination against Shell under the LEDL**

137.    Mr. Smith states a cause of action of unlawful disparate treatment discrimination based on race under the Louisiana Employment Discrimination Law against Shell.

138.    Under the LEDL, no employer may discriminate against an employee based on his race. La. Rev. Stat. Ann. § 23:332 *et seq*.

139.    Plaintiff incorporates by reference here all the factual allegations alleged in this lawsuit.

140.   Accordingly, for all the reasons stated throughout this complaint, and specifically incorporating the analysis of plaintiff's claims of unlawful disparate-treatment discrimination under Title VII, Shell is liable to Mr. Smith for all his damages arising from management's unlawful discrimination, suspension, and termination, including lost back wages, lost future wages, reinstatement, compensatory damages, litigation costs, and reasonable attorney's fees.

## RESERVATION OF AMENDMENT

Mr. Smith reserves the right to amend this lawsuit as circumstances warrant.

## JURY DEMAND

Mr. Smith requests a trial by jury on all issues and causes of action.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Michael K. Smith prays that this complaint be deemed good and sufficient; that it and summons be served upon defendant Shell Exploration and Production Company; and, after due proceedings are had, that judgment be entered in favor of plaintiff and against defendant:

1.   Under all causes of action, the entry of a declaratory judgment in favor of Mr. Smith and against Shell declaring that the practices complained of in this complaint are unlawful under federal and state law and Shell willfully, maliciously, or recklessly as the case may be violated the rights of Mr. Smith as alleged and proven.

2.   Under Title VII, awarding Mr. Smith all damages and equitable relief due against Shell, including but not limited to back pay, front pay or reinstatement, compensatory damages, punitive damages, and reasonable attorney's fees and costs.

3.   Under the LEDL, awarding Mr. Smith all damages and equitable relief due against Shell, including but not limited to back pay, front pay or reinstatement, compensatory damages, and reasonable attorney's fees and costs.

4.   Under all causes of action, awarding all other legal or equitable relief to which plaintiff is due against all defendants.

Respectfully submitted:

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz, TA (Bar #32746)
The Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A / Mandeville, LA 70448
Telephone:  (504) 275-5149
Facsimile:  (504) 910-1704
Email:  vogeltanz@gmail.com

*Attorney for plaintiff Michael K. Smith*

**Clerk of Court: please hold summons pending attempt to secure waiver of service**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHAEL K. SMITH

        Plaintiff,

    v.

SHELL EXPLORATION AND
PRODUCTION COMPANY

        Defendant.

CIVIL NO. PENDING

## <u>DECLARATION OF MICHAEL K. SMITH</u>

I, Michael K. Smith, am 40 years old, and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following facts and true and correct to the best of my knowledge and recollection:

1.     I am the named plaintiff in the lawsuit *Michael K. Smith v. Shell Exploration and Production Company*, soon to be filed in the United States District Court for the Eastern District of Louisiana.

2.     After reviewing the entire document, I authorized and instructed my attorney, Kevin S. Vogeltanz, to file the original Complaint in this matter and to assert all of the causes of action included therein.

3.     I verify that, at the time of its filing, each of the factual allegations of the Complaint was true and correct to the best of my knowledge and recollection.

Executed by me on  <u>6/28/2023</u>

DocuSigned by:

3F608FFAF5FF4AA...

Michael K. Smith